GEORGE KUGLER *vs.* WILLIAM I. SHREVE

An attachment will not lie against a tenant or debtor who is in the act of removing his goods out of the jurisdiction of the court and out of the state, as an absent, nonresident, or absconding debtor, although he may have completed his tenancy, and handed over the keys and possession of the premises recently occupied by him to the incoming tenant.

On *certiorari* to judgment of William C. Howell, justice of the peace.

Argued before Justice CLAWSON.

*Kingman*, for plaintiff in *certiorari*.

*Shreve*, in person, for defendant.

CLAWSON, J.  Kugler, the plaintiff in *certiorari*, used and occupied the house of defendant, in the city of Trenton from January 1st, 1859, to April 1st, 1859, at the stipulated rent of one hundred and fifty dollars the year, payable monthly.  On March 31st, 1859, Kugler moved his goods and chattels out of the house, to a canal boat lying in the basin at Trenton, with the intention of taking them and his family to Norristown, Pennsylvania. Whilst some of the goods were on the boat, some on the wharf ready to be put on board, and others on the premises and in *transitu* from the premises to the boat, an affirmation was made, no doubt in good faith by defendant in *certiorari*, before William C. Howell, a justice of the peace, " that George Kugler is indebted to him in the sum of thirty-seven dollars and fifty cents, as nearly as he can ascertain, and that he verily believes that the said George Kugler is not (to the knowledge and belief of the said William I. Shreve) resident in this state at this time," and a writ of attachment issued by the justice, which was served at once on the same day by the constable seizing the goods of defendant in attachment.  The defendant

himself was present assisting in the removal of his goods from the house to the boat. The question is, had the defendant, at this stage of his removal or in this state of things, lost his residence in the state of New Jersey, and rendered his property liable to be seized by the extraordinary process of attachment authorized by the 40th section of the attachment act against nonresident debtors? or was a summons or warrant the proper remedy? The summons or *capias* is the ordinary remedy, and must be used in all cases where legal service can be made; and if service can be made an attachment will not lie. This has been held repeatedly by the Supreme Court. It is insisted, by defendant in *certiorari*, that Kugler had left his house with his family and goods; that if present at all that day or the next, or both, and it is shown by the papers in the case that he was there both days, that it was merely temporarily, and that by having thus vacated the house his nonresidence was determined. We are compelled by the ruling in the cases, *The President, Directors, and Co. of City Bank, New York*, v. *Merritt and Merritt*, 1 *Green* 131, (see 134), *Brundred* ads. *Del. Hoyo, Spencer* 328, *Clark and Michener* ads. *Likens*, 2 *Dutcher* 207, to think otherwise. It must be admitted that there is some vagueness about the precise meaning of this 24th section, some discrepancy between the meaning of the first clause, "debtors who reside out of this state," and the latter part of the section requiring the oath or affirmation to state that defendant is not " resident at that time in this state." But the construction and meaning heretofore invariably given to the section, and no doubt the correct one, is that it was intended by the legislature to apply to such persons only as were beyond the reach of ordinary process. If a summons or *capias* could have been served, one or the other should have been used, and not the attachment. It appears that Kugler was personally present assisting in the removal of his goods on March 31st, and on April 1st was at Devereux's house, where he stayed the previous

night, and did not leave until some time on April 1st. Plaintiff in attachment insists, however, that it is not necessary that a constable shall look any further or in any other place for a defendant in a summons than at his own dwelling house or usual place of business. The case of *Gardiner et al.* v. *Small*, 2 *Harr.* 163, is good authority upon this point, and the Chief Justice there says "the statute authorizes a service by leaving a copy at defendant's house" or "place of abode" only when he *cannot* be found so as to be personally served. The act undoubtedly means to require the officer who has the process to make use of some diligence, reasonable diligence, to find the defendant, so as to make a personal service before he can serve it otherwise, for the reason that this is the most reasonable way of effecting or compelling the attendance of defendant in court, which is the object of th process. Now could not this defendant have been found on the 31st of March, if any reasonable effort had been made, so that either summons or *capias* could have been served on him? The justice states, in his transcript, that on the same day that the said writ was served, to wit, March 31st, "the *defendant appeared*, with Franklin Devereaux as his attorney. Mr. Devereaux claimed that the defendant was a resident of the state, and had been for several years prior to the issuing of the attachment, and wished to move to quash the writ for that cause, and so forth." Again, it appears by the transcript of the justice, on April 21st, 1859, the day fixed for the hearing of the case, upon the testimony of Devereaux and one Drake, that Kugler was present in Trenton at the time of issuing and service of the attachment; and their statements in this respect are confirmed by the testimony of plaintiff's witness, Randolph H. Moore, who swears that, on the same 31st March, he assisted Kugler in removing his goods from the house to the boat. And the justice states, in giving his reasons for the judgment rendered by him, that " the goods were on the wing, *destined* to go into another state; that Kug-

ler's wife was still also in Trenton, at a friend's; and if the justice had gone still further, and stated that the goods had actually flown or gone into another state, it would not have made the case any stronger for the plaintiff because no intention to remain there was shown in any way. It does not appear, from the papers in the cause, that the defendant had, up to the time of service of attachment, lost his residence in the state of New Jersey. The most that the state of things exhibited shows, and the strongest interpretation that can be given to them against the defendant is, that it was his *intention to remove,* and perhaps remain permanently out of the state. In this he acted in open daylight; no apparent effort on his part to conceal himself or property was made. The mere intention, without the fact of an actual removal, avails nothing; neither does the fact of removal without the intention to remain, and acquire a new residence. *Story's Conf. L.* § 47. Suppose defendant's wife and his goods were all upon the boat, and the boat on her way out of the canal to her place of destination in Pennsylvania, and the defendant at this moment offers his vote at one of our election polls, could it be pretended that his vote would be illegal upon the ground of nonresidence? Suppose Mr. Kugler to be a poor man, and at this juncture of things he breaks a limb, or is suddenly taken sick and rendered incapable of being removed, and he is reduced to the necessity of applying for relief under our poor laws, can it be supposed that at this moment an order for relief could be legally refused upon the ground of nonresidence?

In the case above referred to in *Spencer* 328, at top of page 333, Whitehead, J., in delivering the opinion of the court, says, " The legislature must have contemplated, in this section, the case of a person having not only a legal residence or domicil out of the state, but upon whom the ordinary process of the court could not be served. If the ordinary process of the court could be served upon the debtor, by his being actually within its reach in the state,

then, notwithstanding his legal residence or domicil may have been in another state, he is not liable to this extraordinary proceeding." The case in 1 *Green* 134, fully sustains this construction. The case of *Branson* v. *Shinn*, 1 *Green* 250, very strongly supports the same position. In this case it certainly is evident, from the proof made before the justice upon the argument or hearing of the motion to quash, that the plaintiff, Shreve, knew that Kugler was still personally present in Trenton, and assisting in the removal of his goods, and that for some time previous to March 31st, intended to quit his premises on that day. Moore testifies that he had rented the same premises of Shreve, and that, on March 31st, Kugler had delivered up to him, as the incoming tenant, the keys of the house. How long previous to the issuing of the attachment Mr. Shreve knew the intention of Kugler to move, does not clearly appear, but long enough for him to find another tenant, and certainly long enough for him to have commenced suit rgainst him by summons or warrant, if he had desired so to do. In all his movements, Kugler appears to have acted openly and publicly, and in nothing secretly, deceptively, fraudulently, or clandestinely. It certainly is clear, upon the whole of the facts in the case, that the plaintiff, Shreve, could have proceeded by summons or warrant, and that the attachment was improperly and unlawfully used. The intention and meanidg of the attachment act unquestionably is, as ruled in the cases referred to, that the attachment shall be used only when a summons or *capias* cannot be used. That it shall not be used recklessly to jeopardise a man's interests and property, and prevent him from crrrying on any legitimate business or carrying out any lawful purpose, for the simple reason that it may be the most effectual means of driving a defendant to the extremity of securing a plaintiff's claim. A warrant in this case might have been authorized. perhaps, by the circumstances, and the defendant could have been personally held thereon

until satisfaction be rendered to the plaintiff for his claim; if not, a summons could have been served, and the plaintiff was bound to proceed in that way. *Phillipsburg Bank* v. *Delaware and Lackawanna Railroad Co.*, 3 *Dutcher* 206. In no case, when either summons or *capias* may be served, can the proceeding by attachment be employed.

Whether the giving bond under attachment in justice's court precludes the defendant from making a motion to quash, is not necessary for us here to consider, because it was understood that no advantage should be taken of that fact; and upon the facts under the law applicable thereto, as above stated, the judgment and all proceedings before the justice must be reversed, set aside, and for nothing holden.

CITED *in Perrine ads. Evans*, 6 *Vr.* 224.